**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **HOBBY LOBBY STORES, INC.,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Case No. 3:18-cv-00392** |
| | § | |
| **MELISSA Y. HUERTA,** | § | |
| | § | |
| **Respondent.** | § | |

**PETITION TO COMPEL ARBITRATION AND FOR RELATED INJUNCTIVE RELIEF**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, Petitioner Hobby Lobby

Stores, Inc. ("Hobby Lobby") files this Petition to Compel Arbitration and for Related Injunctive

Relief against Respondent Melissa Y. Huerta ("Respondent"). In support of its Petition, Hobby

Lobby alleges as follows:

**NATURE OF ACTION**

1.      Hobby Lobby brings this Petition pursuant to Section 4 of the Federal Arbitration Act, 9

U.S.C. § 4, seeking to compel Respondent to submit to arbitration claims arising out of and related

to her employment with Hobby Lobby, as required by the valid and enforceable arbitration

agreement she entered into with Hobby Lobby. *See* **Exhibit A**, Mutual Arbitration Agreement.

Hobby Lobby also brings this Petition pursuant to Federal Rule of Civil Procedure 65, the Anti-

Injunction Act, 28 U.S.C. § 2283, and the All Writs Act, 28 U.S.C. § 1651(a), seeking to enjoin

Respondent from further pursuing claims brought in contravention of her arbitration agreement,

including but not limited to the lawsuit she filed in the 384th District Court of El Paso County,

Texas, captioned *Melissa Y. Huerta v. Hobby Lobby Stores, Inc. et al.*, Case No. 2018DCV4133

(hereafter referred to as the "State Court Action"). *See* **Exhibit B**, Pl.'s Org. Pet.

## PARTIES

2.      Petitioner Hobby Lobby is a corporation incorporated in Oklahoma and maintains its principal place of business in Oklahoma City, Oklahoma. Pursuant to 28 U.S.C. § 1332(c)(1), Hobby Lobby is a citizen of Oklahoma.

3.      Respondent Melissa Y. Huerta ("Huerta") is an individual residing in El Paso County, Texas, and, upon information and belief, is a citizen of Texas.

## JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332, which requires that the parties to the controversy be citizens of different states and the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a)(1).

5.      The parties are citizens of different states because the sole Respondent is a citizen of Texas, while Hobby Lobby is the sole Petitioner and is a citizen of Oklahoma. Notably, "[t]he fact that this petition to compel arbitration relates to a state action where complete diversity is lacking is irrelevant for the purposes of this jurisdictional inquiry." *Home Buyers Warranty Corp. v. Barnes*, A-06-CA-256-SS, 2006 WL 8433236, at *3 (W.D. Tex. Aug. 29, 2006) (citing *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 842 (7th Cir. 1999)).

6.      The amount in controversy exceeds $75,000 because based on a good faith estimate of the value of the claims asserted in Respondent's State Court Action Petition – without making any admissions as to the merits thereof – Respondent claims damages exceeding $75,000. *See* **Exhibit B**, Pl.'s Org. Pet. ¶VIII. "When considering a petition to compel arbitration, [a district court] bases its amount in controversy determination on 'the amount of the potential award in the underlying

arbitration proceeding.'" *Barnes*, 2006 WL 8433236, at *3 (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996)). "If the petition to compel arbitration identifies that amount as being in excess of $75,000.00, the amount-in-controversy requirement is met unless the respondent demonstrates 'to a legal certainty the claim is really for less than the jurisdictional amount....'" Id. (internal citations omitted).

7.      Specifically, Respondent's State Court Action Petition alleges numerous counts against Hobby Lobby under Chapter 21 of the Texas Labor Code, and aiding and abetting discrimination, seeking compensatory damages, including damages for back pay, front pay, compensatory damages for mental anguish, emotional distress, punitive damages, as well as attorneys' fees and costs. *See* **Exhibit B**, Pl.'s Org. Pet. ¶¶VIII-IX.

8.      The Texas Commission on Human Rights Act (TCHRA), found in Chapter 21 of the Texas Labor Code, allows for potential recovery of back pay, although liability for back pay may not accrue for more than two (2) years before the date the administrative complaint is filed (Tex. Lab. Code § 21.258); compensatory damages (not including back pay awarded under Section 21.258) are available if the discriminatory conduct is intentional, as alleged in the underlying matter; and punitive damages are available if the intentional discriminatory conduct occurred with malice or reckless indifference, as also alleged in the underlying matter (Tex. Lab. Code § 21.258.); and attorneys' fees, costs, and expert fees may be recovered by the prevailing party (Tex. Lab. Code § 21.259). Courts consider compensatory damages, punitive damages, and attorneys' fees in determining whether the amount in controversy exceeds $75,000. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("[i]f a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1021 (5th Cir. 1992), *on reh'g,* 53 F.3d 663 (5th Cir. 1994) ("when a claim includes

compensatory and punitive damages, both must be considered in determining the amount in controversy"); *accord St. Paul Reins. Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Acosta v. Drury Inns, Inc*., 400 F.Supp.2d 916, 921 (W.D. Tex. 2005) (addressing claims under Chapter 21).

9.      Under Chapter 21, Plaintiff's punitive and compensatory damages could amount to $300,000, an amount far surpassing the Court's jurisdictional minimum of $75,000. *See* Tex. Lab. Code § 21.2585(d) (setting forth a $300,000 cap on compensatory and punitive damages for employers with more than 500 employees). In *Burroughs v. Raytheon Technical Svc. Co*., the plaintiff brought an employment discrimination suit and did not plead a specific amount of damages. 2006 WL 897678 (W.D. Tex. April 4, 2006) (Briones, J.). In her original petition, the plaintiff sought to recover back pay, compensatory damages, punitive damages, and attorney's fees. *Id*. at *3. This Court stated, "[p]laintiff's request for such a multitude of relief sufficed to notify [d]efendants that the amount in controversy would exceed the federal jurisdictional requirement." *Id*. This Court also noted that under Chapter 21, the defendants could have been liable for up to $300,000 in punitive damages. *Id. See also Goosens v. AT&T Corp*., 2000 WL 33348222 (W.D. Tex. April 3, 2000) (Briones, J.) (in a Chapter 21 case, concluding that plaintiff's claims for compensatory damages for past and future pecuniary losses, mental anguish, medical payments, punitive damages, and attorney's fees proved by a preponderance of the evidence that the amount exceeded $75,000); *Hanson v. K-Mart Corp*., 2008 WL 4372701 (W.D. Tex. Sept. 11,2008) (Montalvo, J.) (holding the same); *Drury Inns, Inc*., 400 F.Supp.2d at 921 (W.D. Tex. 2005) (holding that the plaintiffs prayer for past and future economic losses and mental anguish, exemplary damages, and attorney's fees made it facially apparent the amount in controversy exceeded $75,000).

10.     Further, awards for prevailing plaintiffs under the TCHRA have exceeded $75,000. *See, e.g., Hardin v. Caterpillar, Inc*., 227 F.3d 268, 273 (5th Cir. 2000) (offering the plaintiff in a discriminatory discharge case the option of accepting $90,116 in damages or re-trying the case); *Watkins v. Input/Output, Inc*., 531 F. Supp. 2d 777, 788-89 (S.D. Tex. 2007) (entering judgment for the plaintiff in the amount of $1,270,485 on his discriminatory discharge case); *Condon v. Hunting Energy Servs. L.P*., No. CIV.A. H-04-3411, 2006 WL 2882857, at *7-8 (S.D. Tex. Oct. 4, 2006) (entering judgment for the plaintiff in the amount of $115,304 in a discriminatory discharge case); *Persons v. Jack in the Box, Inc*., No. Civ. A. H-03-4501, 2006 WL 846356, at *7 (S.D. Tex. Mar. 31, 2006) (entering judgment for the plaintiff in the amount of $84,839 in a discriminatory discharge case); David J Jung, Report: Jury Verdicts in Wrongful Termination Cases, Public Law Research Institute (1997) (a 1997 study by the Public Law Research Institute reported that Texas plaintiffs who prevailed on their discriminatory discharge claims recovered an average of $175,419 in compensatory damages, with an average punitive damage award of $600,889); *see also Robertson v. Exxon Mobil Corp*., 814 F.3d 236, 241 n.3 (5th Cir. 2015) (taking into account relevant jury verdicts to determine amount-in-controversy; *Rodgers v. Wolf*, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006) (court can consider relevant jury verdicts in determining whether damages are likely to exceed $75,000); *Stainbrook v. Target Corporation*, 2016 WL 3248665, *4 (C.D. Cal. 2016) (to establish punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts).

11.     Further, if Respondent were to prevail at arbitration, it is likely that an attorneys' fee award alone would exceed $75,000.

12.     However, most importantly, Respondent affirmatively alleges that she "is seeking monetary relief over $200,000.00 but no more than $1,000,000.00." **Exhibit B**, Pl.'s Org. Pet.

¶¶VIII. As such, by Respondent's own admission, there is no doubt that the amount-in-controversy requirement is met in this case.

13.     Jurisdiction is also proper pursuant to 9 U.S.C. §§ 1, 2, 3, and 4.

14.     Venue is proper in this Court because Respondent is located in and a substantial part of the events giving rise to this claim occurred in the Western District of Texas (including, but not limited to, Respondent's filing of the State Court Action in the 384th District Court of El Paso County, Texas). 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

15.     Hobby Lobby maintains an arbitration agreement, also called a Mutual Arbitration Agreement, applicable to its applicants and employees. All Hobby Lobby employees are required to enter into the Mutual Arbitration Agreement as a condition of employment.

16.     Hobby Lobby formerly employed Huerta. On February 18, 2016, Huerta signed the Mutual Arbitration Agreement, acknowledging she had read the agreement and consented to its terms and conditions, including an agreement to resolve any future employment-related dispute through arbitration on an individualized basis, not in court. *See* **Exhibit A**.

17. The Mutual Arbitration Agreement signed by Huerta and Hobby Lobby provides in relevant part:

> *"[Y]ou and the Company agree binding arbitration is the sole and exclusive means to resolve all disputes that may arise out of, or be related to, your employment with the Company …. You and the Company each specifically waive and relinquish the respective right to sue each other in a court of law*, and this waiver shall be equally binding on any person who represents or seeks to represent you or the Company in a lawsuit against the other …."

> "[T]his Agreement to arbitrate applies to any dispute, demand, claim, complaint, controversy, cause of action, or suit (as applicable, a "Dispute") arising under or involving any federal, state, or local law, statute, regulation, code, ordinance, rule, common law, or public policy … that in any way … relates to your … employment

with the Company…compensation; or…termination of employment with the Company."

**Exhibit A** ¶¶1-2 (emphasis added).

Covered Disputes include, but are not be limited to, those involving hiring or not hiring, wrongful termination, wages, compensation, work hours… defamation, negligence, intentional torts … pain and suffering, emotional distress …harassment and/or discrimination based on any class protected by law, retaliation, interference and/or opposition of discrimination or harassment, and/or any other employment-related Disputes based in tort, contract, or any other nature or theory whatsoever.

**Exhibit A** ¶2 n.3.

"This Agreement is made in consideration for the acceptance by the Company of your application for employment, and if the Company hires you, in consideration for employing you and continuing to employ you, for the benefits and compensation provided by the Company to you, and for the mutual agreement to arbitrate as provided in this Agreement."

**Exhibit A** ¶15.

To the maximum extent permitted by Law and except as otherwise set forth in this Agreement, the arbitrator selected by the parties shall administer the arbitration according to the Employment Arbitration Rules (or successor rules) of the [American Arbitration Association] and Federal Rule of Civil Procedure 68."

**Exhibit A** ¶6.

Knowledge and Consent. BY THEIR SIGNATURES BELOW, SUBJECT TO THE PROVISIONS ABOVE, *BOTH PARTIES* ACKNOWLEDGE THEY HAVE READ THIS AGREEMENT, *ARE GIVING UP ANY RIGHT THEY MIGHT HAVE AT ANY POINT TO SUE THE OTHER IN COURT*, ARE WAIVING ANY RIGHT TO A JURY TRIAL, AND ARE KNOWINGLY AND VOLUNTARILY CONSENTING TO ALL TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT.

**Exhibit A** ¶18 (emphasis added).

18.     The Mutual Arbitration Agreement is a valid and binding arbitration agreement. Under the

Mutual Arbitration Agreement, employment-related disputes must be resolved through binding

arbitration. The Parties agreed they did not waive any substantive legal rights under applicable

law; rather, they merely agreed to change the forum for resolving claims or disputes, such that

their disputes would be presented to an arbitrator instead of a court.

19.     Respondent breached the Mutual Arbitration Agreement she signed on February 18, 2018, by filing the State Court Action in the 384th District Court of El Paso County, Texas, alleging two claims under Texas common law and the TCHRA, all of which directly arise from her employment with Hobby Lobby. *See* **Exhibit B**. The State Court Action also named June Rickerson as an individual defendant who allegedly violated Texas common law in relation to Respondent's employment with Hobby Lobby. Ms. Rickerson, who is no longer employed with Hobby Lobby, has not been served in the State Court Action. All of Respondent's claims in the State Court Action fall squarely within the scope of the Mutual Arbitration Agreement, and her failure to submit such claims to arbitration is a direct violation of the Mutual Arbitration Agreement.

20.     Prior to the filing of the State Court Action, counsel for Hobby Lobby communicated verbally and via email with counsel for Respondent, who did not respond to Hobby Lobby's request to comply with the obligations under the Mutual Arbitration Agreement and proceed directly to arbitration, instead of pursuing the State Court Action. On December 24, Respondent's counsel advised that he did not agree to arbitration, and Respondent has not complied with her obligations under the Mutual Arbitration Agreement, which requires that she submit to arbitration her claims arising from her employment with Hobby Lobby.

### COUNT I – PETITION TO COMPEL ARBITRATION

21.     Hobby Lobby incorporates the preceding paragraphs as if fully set forth herein.

22.     The Mutual Arbitration Agreement entered into between Respondent and Hobby Lobby is a valid and enforceable arbitration agreement that covers Respondent's claims in the State Court Action.

23.     Respondent refused to submit her claims to arbitration and instead filed such claims in the

State Court Action.

24.     This Court is permitted to compel arbitration. The Federal Arbitration Act, 9 U.S.C. § 4, allows Hobby Lobby to petition this Court for an order directing Respondent to proceed to arbitration in the manner provided for in the Mutual Arbitration Agreement.

25.     Hobby Lobby therefore asks this Court to compel Respondent to submit to arbitration all claims arising out of or related to her employment with Hobby Lobby, including the claims asserted in the State Court Action, in the manner provided for in the Mutual Arbitration Agreement.

**COUNT II – PETITION FOR INJUNCTIVE RELIEF**

26.     Hobby Lobby incorporates the preceding paragraphs as if fully set forth here.

27.     This Court is also permitted to grant injunctive relief related to arbitration. *See* Fed. R. Civ. P. 65; Anti-Injunction Act, 28 U.S.C. § 2283 (federal court may stay state court proceedings if authorized by law, necessary to aid jurisdiction, effectuate its judgments); All Writs Act, 28 U.S.C. § 1651(a) (federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); Federal Arbitration Act, 9 U.S.C. § 3 (permitting court to stay proceedings pending arbitration).

28.     If a dispute is subject to mandatory grievance and arbitration procedures, then the proper course of action is to stay the proceedings pending arbitration. *Barnes*, 2006 WL 8433236, at *5 (compelling a Respondent to submit her claims in arbitration, and likewise entering an order enjoining Respondent from prosecuting her claims against the Petitioner in the state courts; citing *Conseco Fin. Serv. Corp. v. Shinall*, 51 Fed.Appx. 483, 2002 WL 31319368 at *8 (5th Cir. Oct. 1, 2002) (not designated for publication) (holding that the district court properly stayed state court proceedings when the parties' dispute was subject to arbitration)); *see also Williams v. Cigna Fin.*

*Advisors, Inc.*, 56 F.3d 656, 658–59, 662 (5th Cir.1995); 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.").

28.     Respondent is pursuing the State Court Action in contravention of the valid and enforceable Mutual Arbitration Agreement. Hobby Lobby will suffer irreparable harm unless the State Court Action is stayed, and Respondent is compelled to arbitrate her claims brought in the State Court Action pursuant to the requirements of the Federal Arbitration Act. *See Salad Bowl Franchise Corp. v. Crane*, 3:11-CV-0043-D, 2011 WL 942239, at *6 (N.D. Tex. Mar. 17, 2011) (holding that "[i]f [Respondents] are permitted to litigate their disputes in the [state court] lawsuit, despite the likelihood that they are covered under the Agreement's arbitration clause, [Petitioner] will be deprived of its right to select the forum in which the disputes are resolved—a deprivation that cannot be remedied merely by monetary compensation" and stating that "permitting [Respondents] to proceed in state court carries the risk of irreparable harm in the event the state court reaches a decision affecting matters that should have been submitted to arbitration under the FAA.").

29.     Hobby Lobby therefore asks this Court to grant injunctive relief in aid of arbitration and enjoin Respondent from further pursuing her claims in the State Court Action, which is necessary to protect the integrity of the Court's jurisdiction and any final judgment on the issue of arbitration.

### REQUEST FOR ATTORNEYS' FEES

30.     Section 11 of the Mutual Arbitration Agreement states the following:

> Breach. Should any party institute an action in a court of law or equity against the other party with respect to a Dispute required to be arbitrated under this Agreement,

the responding party shall be entitled to recover from the initiating party all costs, expenses, and attorney's fees incurred to enforce this Agreement and compel arbitration, and all other damages resulting from or incurred as a result of such court action.

**Exhibit A** ¶11.

Accordingly, Hobby Lobby respectfully requests that this Court award it all of its costs, fees and expenses, including attorneys' fees, for having to file this petition and enforce the Mutual Arbitration Agreement, as provided for in section 11 of the Agreement.

**WHEREFORE PREMISES CONSIDERED**, Petitioner Hobby Lobby Stores, Inc. respectfully asks the Court to:

(1) enter an order and judgment compelling Respondent to submit to arbitration all claims arising out of or related to her employment with Hobby Lobby, including the claims asserted in the State Court Action;

(2) enter an order staying all proceedings in and enjoining Respondent from further pursuing the State Court Action;

(3) enter an order staying all proceedings in this Action pending an award or decision from the Arbitrator;

(4) award Hobby Lobby its attorneys' fees and costs that has incurred in enforcing the Mutual Arbitration Agreement through this litigation and any previous attempts to arbitrate;

(5) award Hobby Lobby its attorneys' fees and costs in bringing this action; and

(6) order any further relief, general and special, legal and equitable, that the Court deems appropriate, and to which Hobby Lobby is justly entitled.

Respectfully submitted,

**DICKINSON WRIGHT, PLLC**
221 N. Kansas, Ste. 2000
El Paso, Texas 79901
Tel.: 915-541-9322
Fax: 844-670-6009

By:    /s/*Mark C. Walker*
Mark C. Walker
Texas State Bar No. 20717320
mwalker@dickinson-wright.com
Mario Franke
Texas State Bar No. 24074225
mfranke@dickinson-wright.com

**ATTORNEYS FOR PETITIONER
HOBBY LOBBY STORES, INC.**


## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on this the 26th day of December, 2018,

via the Court's CM/ECF electronic filing system, and via electronic mail to:

Mr. Oscar Mendez, Jr.
Scherr & Legate, PLLC
109 N. Oregon, 12th Floor
El Paso, Texas 79901
Tel: (915) 544-0100
Fax: (915) 532-1759
omendez@scherrlegate.com
***COUNSEL FOR RESPONDENT***

/s/*Mark C. Walker*
**Mark C. Walker**

ELPASO 86203-1 14010v1